# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TERRY S. SHANNON,

        Petitioner,

v.

WILLIAM J. POLLARD,

        Respondent.

Case No. 14-CV-980 -JPS

**ORDER**

      On August 11, 2014, Petitioner filed a petition for a writ of habeas corpus. (Docket #1). The case was stayed and held in abeyance for over three and a half years while Petitioner exhausted his remedies in state court. *See* (Docket #30). When the stay was finally lifted, Petitioner did not comply with the Court's deadlines, resulting in various delays, including a default judgment that was ultimately vacated. *See* (Docket #36, #38, #43). Petitioner finally filed a brief in support of his petition for habeas corpus on June 18, 2018. (Docket #41). Respondent timely opposed the petition, (Docket #45), and Petitioner failed to reply. *See* (Docket #46) (letter from Petitioner stating that he would miss his reply deadline because his jailhouse lawyer had been transferred to another facility, taking with him Petitioner's legal documents). Since then, despite having ample time, there has been absolutely no word from Petitioner. The Court will, therefore, address the merits of the case.

      Petitioner brings this petition for a writ of habeas corpus to challenge a state court homicide conviction arising from Racine County Circuit Court Case Number 2006CF594. He proceeds on the following grounds for relief: First, that the jury should have been properly instructed on the issue of self-

defense; second, that his trial and appellate counsel were ineffective for failing to request proper jury instructions and failing to raise that issue on appeal. *See* (Docket #27 at 6–7).[1] For the reasons explained below, Petitioner's habeas petition will be denied, and this action will be dismissed.

1. **STANDARD OF REVIEW**

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court

---

[1] The Court also identified claims regarding trial counsel's failure to file a *Brady* motion and the government's failure to divulge *Brady* materials; however, Plaintiff's brief in support of his petition did not address these issues at all, so the Court does not address them here.

unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)).

Indeed, the petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). Further, when a state court applies general constitutional standards, it is afforded even more latitude under the AEDPA in reaching decisions based on those standards. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question *de novo*. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).

## 2. RELEVANT BACKGROUND

### 2.1 Factual Background

On May 7, 2006, Benny Smith ("Smith") and three of his friends (collectively, "the Group") were on their way home from a nightclub in Racine, Wisconsin. The Group had just exchanged numbers with two women, Tamara Miller ("Miller") and Shenita Whitnell ("Whitnell"), with whom they intended to meet up later in the night. First, however, the Group stopped in the parking lot of an International House of Pancakes ("IHOP"). During this detour to the IHOP parking lot, Smith saw Shannon, the petitioner in this case. Smith and Shannon knew each other and exchanged heated words.

Shortly thereafter, the Group left the IHOP parking lot in order to meet up with Miller and Whitnell on College Avenue. The Group waited for the women in a vehicle, which was driven by Smith. Miller and Whitnell arrived at the meeting point on College Avenue, and Miller approached the Group's vehicle. As she did, another car, driven by Shannon and his brother Antonio, pulled up next to the Group's vehicle. Shots were immediately fired. Forensic evidence later revealed that three guns were involved, and shots were fired from both vehicles. Smith was shot in the head and died. Shannon and Antonio were charged with Smith's murder.

### 2.2 Procedural Background

The Shannon brothers were each offered, and accepted, a plea to second-degree reckless homicide. However, shortly before they were to be sentenced, they each withdrew their pleas, claiming ineffective assistance of counsel. The state court permitted the withdrawal, and the parties proceeded to trial on first-degree intentional homicide charges under Wis. Stat. § 940.01.

At trial, Shannon's theory of the case was that he did not shoot Smith and was not guilty of first-degree homicide; he contended that one of the people in Smith's own vehicle shot him. In the alternative, Shannon claimed that if he did shoot Smith, it was because Shannon reasonably believed that he was in danger of imminent death or great bodily harm and also reasonably believed that deadly force was necessary to prevent the imminent death or great bodily harm. This is known as an assertion of "complete self-defense"—if the jury found that Shannon's beliefs were reasonable, then his first-degree homicide charge would be completely excused. Wis. Jury Instructions – Crim. 805; Wis. Stat. § 939.48(1).

The Court pauses here to provide some context regarding Wisconsin's statutory scheme for homicide and self-defense, as it is the source of considerable confusion in the petitioner's briefing. First-degree intentional homicide, which Shannon was charged with, occurs where an accused "causes the death of another human being with intent to kill that person or another." Wis. Stat. § 940.01(1)(a). Second-degree intentional homicide carries the same requirement, but is available where, "the state fails to prove beyond a reasonable doubt [or otherwise concedes] that the mitigating circumstances specified in s[ection] 940.01(2) did not exist." Wis. Stat. § 940.05(1). Second-degree intentional homicide is not to be confused with second-degree *reckless* homicide, which Shannon was originally offered as a plea, and which occurs if an individual "recklessly causes the death of another human being." Wis. Stat. § 940.06(1).

The circumstances under which a first-degree intentional homicide offense would be decreased to a second-degree intentional homicide offense are as follows: (1) adequate provocation; (2) unnecessary defensive force; (3) the prevention of a felony; and (4) coercion or necessity. Wis. Stat.

Page 6 of 19
Case 2:14-cv-00980-JPS   Filed 07/01/20   Page 6 of 19   Document 48

§ 940.01(2). In other words, if a defendant "cause[d] the death of another human being with intent to kill that person," but one of the four enumerated mitigating circumstances existed, then that person should be convicted of second-degree intentional homicide, rather than first-degree intentional homicide. Wis. Stat. §§ 940.01(1)(a), (2); 940.05. "The difference between the two degrees of [intentional] homicide is the presence or absence of mitigating circumstances." *State v. Head*, 648 N.W.2d 413, 429 (Wis. 2002).

Although the statute provides for four different mitigating circumstances, in this case, only the "unnecessary defense force" mitigation comes into play. This can be characterized as a "partial self-defense." As discussed above, *complete* self-defense to first-degree intentional homicide exists if the defendant reasonably believed that his life or limb were in danger and reasonably believed that deadly force was necessary to avoid that risk. Wis. Stat. § 939.48(1); *Head*, 648 N.W.2d at 429. By contrast, *partial* self-defense to first-degree intentional homicide—one that would decrease first-degree intentional homicide to second-degree intentional homicide— exists if the defendant *actually* believed that he was in imminent danger and *actually* believed that deadly force was necessary, even if that belief was objectively unreasonable. Wis. Stat. § 940.01(2)(b). In other words, if a jury determined that either of defendant's beliefs were ridiculous but honestly held, then his culpability would be deemed mitigated and he should be convicted of second-degree intentional homicide.

As the discussion above demonstrates, a second-degree intentional homicide conviction directly follows from a mitigating circumstance, and in this case, the potential mitigating circumstance would have been unnecessary defense force—which the Court has described as "partial self-

defense." Wis. Stat. § 940.05(1). Thus, in order for the jury to have properly considered a partial self-defense instruction, it must have been able to convict on second-degree intentional homicide. In this case, however, Shannon did not request that second-degree intentional homicide be included on the verdict form (a practice known as requesting the jury to consider the "lesser included offense"). This meant that the jury was not instructed on second-degree intentional homicide, and therefore had no occasion to consider any mitigating circumstances.

At the jury instruction conference, Shannon's attorney told the trial court that he had discussed with his client the ramifications of failing to request the "lesser included offense" on the verdict form, and that they were firm on their conviction to "go for broke" on the first-degree homicide charge. *See State v. Shannon*, 2015AP922, 2016 WL 7177463, at \*2 (Wis. Ct. App. Dec. 7, 2016). At trial, the jury found Shannon guilty of first-degree murder. The jury found that the complete defense did not apply.

After a few procedural detours, Shannon filed a post-conviction motion regarding the jury instructions in his case. Shannon's primary argument demonstrates much confusion: he repeatedly contends that a partial self-defense instruction should have been given, without regard for the fact that this would only have been proper if he had also requested a second-degree intentional homicide charge. This argument led the state courts to consider the issue as part of his ineffective assistance of counsel claims for failing to request a second-degree intentional homicide charge, and for failing to raise the issue on appeal. However, folded into this claim was an argument that the jury was not properly instructed on how to consider the State's burden with regard to the self-defense argument, in violation of Shannon's due process rights.

Page 8 of 19
Case 2:14-cv-00980-JPS   Filed 07/01/20   Page 8 of 19   Document 48

A post-conviction hearing was held pursuant to *State v. Machner*, 285 N.W.2d 905, 908–09 (Wis. Ct. App. 1979), which is a prerequisite in Wisconsin for a defendant to proceed on an ineffective assistance of counsel claim on appeal. At the hearing, trial counsel testified that he had acted strategically in deciding not to request the lesser-included offense in the jury instruction, because it would have entailed including evidence of prior shootings between the parties, which could have been prejudicial. *See State v. Shannon*, 2016 WL 7177463, at *2. Moreover, trial counsel articulated a "go for broke" approach with regard to the singular first-degree intentional homicide charge, particularly in light of the fact that Shannon had withdrawn his plea as to a second-degree reckless homicide charge. *Id.*

In light of the *Machner* hearing, the trial court determined that trial counsel was not deficient for failing to request the second-degree intentional homicide offense (and the subsequent mitigating instruction) because there was a sound legal strategy undergirding the decision to only request first-degree intentional homicide. Accordingly, post-conviction counsel was not inadequate for failing to raise the issue on appeal. Shannon appealed the decision, and the Wisconsin Court of Appeals affirmed the trial court's decision. *Id.* The Wisconsin Supreme Court denied review.

**3.     ANALYSIS**

   **3.1     Due Process Issue Regarding Jury Instructions**

At the outset, the Court must determine whether Shannon procedurally defaulted on his claim that his due process rights were violated by the jury instructions presented at trial. (Docket #45 at 10–12). This Court cannot consider Shannon's habeas claim unless it has first been "fully and fairly presented. . .to the state appellate courts," thereby giving the courts a "meaningful opportunity to consider the substance of the

claim[] that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); 28 U.S.C. § 2254(b)(1)(A). Fair presentment requires that the petitioner apprise the state courts of the constitutional nature of the claim, but it "does not require hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citation omitted). The Seventh Circuit considers the following factors to determine whether the issue was adequately presented to the state judiciary:

> 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001).

The Court finds that Shannon has not procedurally defaulted on the issue of whether the state court failed to properly give self-defense instructions in violation of his due process rights. Shannon devoted a substantial portion of his state court submission to arguing that the jury instructions did not require the State to meet its burden in disproving that he acted in self-defense. *See* (Docket #34-8 at 6, 13, 15–16). Before this Court, Shannon again raised the deficiency, contending that the jury instructions were written in such a way that jurors were "at liberty to stop deliberating and find Shannon guilty, notwithstanding the generic self-defense instruction." (Docket #41 at 7).

Although Shannon did not identify any federal cases at the state level discussing due process, he did refer to the issue of due process as it related to the improper jury instructions before the state court. *See* (Docket #34-8 at 3–4) (Shannon's table of authorities, citing the Sixth Amendment "due process" right regarding jury instructions). Moreover, Shannon's arguments before the state court clearly describe an issue with the adequacy of the jury instructions, which is familiar enough to hearken a due process violation. *See e.g.*, *Ross v. State*, 211 N.2.2d 827, 833 (Wis. 1970) (evaluating whether "the standard used for determining whether a lesser included offense be submitted to the jury is. . .a denial of due process."). This sufficiently raises the specter of a due process violation, both before the state court and this Court. (Docket #34-8 at 6–16); *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004) (holding that a petitioner drew "enough of a connection between his right to due process and the trial court's. . .instructional errors" to state cognizable habeas claim). The Court will therefore proceed with evaluating Shannon's due process claim that the jury was not properly instructed on his claim of self-defense.

Due process requires the state to "prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). However, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Id.* Rather, the instruction must have been so woefully inadequate that it tainted the entire trial. *Id.* (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). Accordingly, courts must view the deficiency "in the context of the overall charge." *Id.* (citations and quotations omitted). The burden on the petitioner is heavy—he must show a "'reasonable likelihood' that the jury applied the instruction in a way that

relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009) (quoting *Estelle*, 502 U.S. at 72).

Here, much of Shannon's argument is based on his mistaken understanding of the law. He believes that a partial self-defense instruction—without a second-degree intentional homicide instruction—should have been given. However, as the Court's discussion in Section 2.2 makes clear, this is simply not possible. The lack of instruction on partial self-defense (which would have concerned what Shannon *actually* believed) was in keeping with the fact that Shannon elected not to request the lesser-included offense of second-degree intentional homicide. The constitutionality of that legal tactic will be evaluated as an ineffective assistance of counsel claim in Section 3.2, below. Suffice it to say, as far as the fairness of the trial was concerned, the jury instructions were not an issue.

To the extent that Shannon alleges that the jury members were not properly instructed on the State's burden regarding *complete* self-defense, and were instructed in such a way as to preclude findings on the issue of self-defense, (Docket #41 at 7–8), this argument is procedurally defaulted, as it appears nowhere in Shannon's state submissions. But this is no great loss, as the argument is wholly without merit. The transcripts reflect that the trial court appropriately and thoroughly advised the jury on the issue of self-defense—including stating that a reasonable mistake still qualifies as self-defense, and that the burden lies with the State to disprove self-defense. (Docket #34-26 at 137:12–138:15). After explaining what complete self-defense entailed and where the burden fell, the trial court instructed that:

> If you are satisfied beyond a reasonable doubt that all the elements of party to the crime of first degree intentional homicide and discharging a firearm from a vehicle—and I will read that instruction to you next—**if those have been proved and the defendant did not act lawfully in self-defense, you should find the defendant guilty**. If you are not so satisfied, you must find the defendant not guilty.

*Id.* at 138:16–23. It is clear, from the trial transcript, the that jury was made aware of the existence and details of the self-defense argument, the effect that it would have on the first-degree homicide offense, and the fact that the burden fell to the State to disprove it. The fact that the jury found Shannon guilty means that they found that the State adequately disproved the self-defense argument. While it may be true that the instructions could have been clearer—perhaps with another, more explicit statement that the self-defense argument completely excused the first-degree homicide offense—the totality of the instructions are not so inadequate that they relieved the State of the burden of proving its case beyond a reasonable doubt. *Waddington*, 555 U.S. at 191.

Shannon also takes issue with the jury instructions regarding whether he acted "lawfully in self-defense." Shannon suggests that this wording could prompt the jury to conclude that he could act "unlawfully" in self-defense. This is an unnecessarily tortured reading of the jury instructions, particularly because, prior to instructing the jury to determine whether Shannon acted "lawfully in self-defense," the trial court described exactly what lawful self-defense entailed. In short, there was no due process violation with the jury instructions.

### 3.2 Ineffective Assistance of Counsel Claims

The Court of Appeal's *Blake* opinion neatly summarizes the standards applicable to Shannon's claims of ineffective assistance:

> A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 . . . (1984)[.]
>
> To satisfy the first element of the *Strickland* test, appellant must direct the Court to specific acts or omissions by his counsel. In that context, the Court considers whether in light of all the circumstances counsel's performance was outside the wide range of professionally competent assistance. The Court's assessment of counsel's performance is "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" [*Id.* at 689.]
>
> . . .
>
> To satisfy the second *Strickland* element, appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome.

*Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (citations and quotations omitted).

The *Strickland* test, layered underneath the above-described standard of review, produces the following question for the Court to answer: whether the Wisconsin Court of Appeals' ruling on Shannon's claims represents an unreasonable application of the already extremely deferential *Strickland* standard. *Harrington*, 562 U.S. at 101. As *Blake* explains, claims of ineffective assistance are already assessed with

Page 14 of 19
Case 2:14-cv-00980-JPS   Filed 07/01/20   Page 14 of 19   Document 48

deference to the defendant's counsel. Presenting such claims in the context of a habeas proceeding means that Shannon must not only prove that the Wisconsin Court of Appeals' analysis was wrong, but additionally that it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103; *id.* at 105 ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so[.]") (citations and quotations omitted). To the extent Shannon seeks to show that the Wisconsin Court of Appeals' decision was based on an "unreasonable determination of the fact" under 28 U.S.C. 2254(d)(2), he must do more than merely show that the evidence is debatable. *Wood v. Allen*, 558 U.S. 290, 303 (2010). He most show that "the state court determined an underlying factual issue against the clear and convincing weight of the evidence." *Ben-Yisrayl v. Buss*, 540 F.3d 542, 549 (7th Cir. 2008). Additionally, in the context of a *Strickland* analysis, he must show that this unreasonable evidentiary finding resulted in prejudice. *Id.* at 550.

      Shannon's arguments do not carry the burden on this issue. He asks the Court to find that it was an error for his trial counsel to fail to include the partial self-defense jury instruction but, as the preceding discussion of Wisconsin law in Section 2.2 makes clear, the partial self-defense instruction is only available if the parties request a finding on the lesser-included offense. The Wisconsin Court of Appeals reviewed the record from the trial court, which included transcripts of the trial and post-conviction hearings, and determined that it was sound trial strategy not to request the lesser-included offense. Specifically, it provided the following analysis:

> While evidence did exist to support the assertion of imperfect self-defense, Shannon purposely and strategically decided, with advice of counsel, not to assert the affirmative defense of imperfect self-defense. . . Where a defendant, as a matter of strategy, does not request a lesser-included offense, the defendant cannot later claim error in the instructions. . . An "all-or-nothing" approach has been recognized in Wisconsin courts as a reasonable strategic decision whereby defense counsel excludes a lesser-included offense to force the jury into an acquittal by denying them a second option to convict. . . A defendant has a right to "go-for-broke" or employ an "all-or-nothing" defense, but if that strategic decision fails, it is not deficient performance. . .
>
> Shannon's primary strategy to the State's charge of first-degree intentional homicide was to show that someone in Smith's car caused Smith's death; his secondary strategy was that even if he caused Smith's death, it occurred under the privilege of perfect self-defense, i.e., that he reasonably believed his life was in imminent danger and he reasonably believed that it was necessary to use force which was intended or likely to cause death. If Shannon had been successful on either strategy, he would have walked out of the courtroom a free man.
>
> Shannon was aware of and considered his right to have second-degree intentional homicide on the verdict. Shannon agreed with the advice of his counsel and chose an "all-or-nothing" strategy of going to trial solely on first-degree intentional homicide. Shannon's strategy was to beat the charge of first-degree intentional homicide by convincing the jury that the State did not meet its burden to prove that Shannon caused the death of Smith. Shannon's secondary strategy, that he acted in perfect self-defense, was also reasonable given the amount of gunfire coming out of the Smith vehicle.

2016 WL 7177463, at *3–*4 (citations and quotations omitted).

On review of the Wisconsin Court of Appeals' analysis of the case, the Court cannot say that it erred in concluding that trial and appellate

counsel acted reasonably under *Strickland*. Certainly, in his briefing before this Court, Shannon is demonstrably confused about when partial self-defense can be requested. But the record supports a conclusion that Shannon agreed to the decision not to request the lesser-included offense as part of the trial strategy. (Docket #34-28 at 61:7–14). And—crucially—Wisconsin state courts hold that this is type of strategy is legitimate and reasonable. *State v. Kimbrough*, 630 N.W.2d 752, 760 (Wis. Ct. App. 2001). Therefore, the decision not to request the partial self-defense was appropriate, because it was part of the larger strategy to "go for broke." The record does not reveal unreasonable conduct on the part of the trial attorney that would give rise to a Sixth Amendment violation—consequentially, there is no basis for liability on the part of post-conviction counsel for failing to raise the issue of ineffective assistance of counsel.

### 4. CONCLUSION

For the reasons explained above, the Court finds that Petitioner's asserted grounds for relief are without merit. The Wisconsin state courts did not err in their conclusions of law and fact regarding trial counsel's failure to raise the partial self-defense instruction, and appellate counsel's failure to raise that issue on appeal. Nor is there any evidence in the record to support a claim that Petitioner's due process rights were violated by the jury instructions.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree

Page 17 of 19
Case 2:14-cv-00980-JPS   Filed 07/01/20   Page 17 of 19   Document 48

that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). As the Court discussed above, no reasonable jurists could debate whether the petition has merit. The Court must, therefore, deny Petitioner a certificate of appealability.

Finally, the Court closes with some information about the actions that Petitioner may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline, either. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Page 18 of 19
Case 2:14-cv-00980-JPS   Filed 07/01/20   Page 18 of 19   Document 48

Accordingly,

**IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 1st day of July, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Page 19 of 19
Case 2:14-cv-00980-JPS   Filed 07/01/20   Page 19 of 19   Document 48